CASE No. 849.

SUBER v. ALLEN.

A judgment creditor brought his action against the several parties, their sureties and representatives, who had administered upon the estate of his judgment debtor, deceased, for account, settlement, &c., alleging also that the lands of the deceased were bound by his judgment, and that " plaintiff is informed and believes that one S. claims to be the owner in fee of the land herein described, but the plaintiff denies the validity of said title,

if any he have, and alleges that the same is illegal and void "—*Held*, on demurrer of a defendant properly a party, that complaint was multifarious for misjoinder of the cause of action against S.*

Before THOMSON, J., Richland, May, 1879.

Action commenced in December, 1878, by C. H. Suber, as administrator of John Coate against Nancy Allen and others, heirs-at-law of J. M. Allen, the administrator *de bonis non* of Allen, the administrator of the first administrator, a surety of the first administrator, and the administrator of a deceased surety,

---

* A decree upon the question of multifariousness, rendered by the Hon. John A. Inglis, formerly one of the Chancellors of this state, and afterwards one of the justices of the Court of Appeals, is worth preserving, and may therefore be appropriately inserted here. The cause was tried at June Sittings, 1860, of the Court of Equity for Union District, and the decree was filed August 1st of the same year. So much of it as bears upon the demurrer for multifariousness is given in full:

<blockquote>
George B. Tucker<br>
    *v.*     } Bill for account, partition, &c.<br>
James A. Tucker *et al.*
</blockquote>

The parties to this cause are the children, and, as such, the heirs-at-law and distributees of Fanny Tucker, late of Union District, who died intestate in December, 1857. At her death the intestate was seized and possessed of a considerable real and personal estate, consisting of one or more plantations, a number of negro slaves, and the usual stock of horses, cattle, &c., found about a planting establishment. Administration of the personal estate was, in the early part of last year, 1859, duly granted to Thomas C. Jeter, the husband of one of the intestate's daughters; as it is said, to him and his wife jointly. Under an order from the Court of Ordinary, all the personal chattels, which came into the possession of the administrators, have been sold on a credit. George B. Tucker, one of the distributees, was a purchaser at this sale to the extent of nearly $22,000, and, to secure payment of the purchase money, gave his two notes; each for one half the amount, with interest, payable the one on January 1st, 1860, and the other on January 1st, 1861. The former of these notes not having been paid at its maturity, an action for the recovery of the amount due thereon was brought in Common Pleas at last Spring Term. Pending this action $7000 has been paid in part satisfaction of the note, and the administrators are proceeding to judgment for the balance. During the last eighteen years of the intestate's life, George B. Tucker, who was her youngest son, lived with her, and had the oversight and management of her property and business, upon a contract, as he says, for compensation. He holds a note, under seal, purporting to be made by her, bearing date March 23d, 1853, for the payment to him of $6500, at three days, "for value received in managing

and J. C. F. Sims, who, it was alleged, claimed a lot of land belonging to Allen. The complaint demanded an accounting and payment of a judgment obtained by John Coate against J. M. Allen during his lifetime. The land in Sims' possession, it was alleged, was bound by this judgment. All of the defendants answered, except Simeon Youngiuer, the administrator of the deceased surety, who demurred as follows:

The defendant, Simeon Youngiuer, as surviving administrator of the estate of Peter B. Smith, deceased, demurs to the complaint herein, for the grounds that it appears upon the face of the complaint—

her business for the thirteen years" then last preceding. The validity of this paper is denied by the other distributees, on grounds touching the legal competency of the intestate to bind herself by deed at the date which it bears, and force or fraud put upon her will by the undue influence exerted by the holder. An action in the Common Pleas has been brought by George B. Tucker against the administrators, wherein he is seeking to recover out of the assets in their hands the amount of this demand, with interest, and also a further demand of $2500, claimed to be due to him upon his contract as manager for the intestate for the five years intervening between the date of the note and her death. This recovery is resisted by the other distributees, who, on the contrary, allege that he never accounted with his intestate in her lifetime for his receipts and disbursements as her agent, for the crops made under his management and control and disposed of by him, from year to year, during the period of his stewardship, and for other moneys of the intestate which came to his hands; that upon such accounting he would be in debt to her estate, and that the other distributees are in this court, and in the settlement of the estate entitled to such accounting from him. And, indeed, to his action at law a discount or set-off has been filed by the administrators, charging him with the alleged value of the yearly crops made.

For more than a year after the intestate's death, during which the question of her intestacy was in litigation, and there was, consequently, no administration, George B. Tucker retained in his possession all the property left by the intestate. It is alleged that upon the grant of the administration he did not deliver to the administrators all the "goods, chattels and effects" of the intestate which had been thus in his hands. Certain negro slaves, now in his possession, are claimed to have been the property of the intestate at her death and to have been converted by him to his own use; and the administrators have an action of trover now pending in the Common Pleas for the recovery of damages for such conversion. But besides these, it is charged that he had in his possession, after the intestate's death, sundry other chattels, and particularly two promissory notes or other securities for the payment of money, all the property of the intestate; one of the said securities being his own obligation in some form for the payment of $1800, subject to a credit of $800, paid in

*First.* That there is another action pending between the same parties for the same cause of action.

*Second.* That several causes of action have been improperly united; one being to marshal the assets of the estate of John M. Allen, and for the payment of the debts found to be due by said intestate, and for an account by Daniel B. Miller, as administrator of the estate of Addison R. Phillips, who was the administrator of the estate of the said intestate; the second being against this defendant as the surviving administrator of Peter B. Smith and William Glaze, who was a co-surety with defendants'

part thereof; and the other a small note of one of the other distributees, James A. Tucker; and that these he has retained wrongfully. In the year during which he kept possession of the whole property, he cultivated the land and used the labor and services of the negro slaves, horses, &c. It is stated in the pleadings that during the year 1859, George B. Tucker and Thomas C. Jeter have each had in possession and use, portions of the land of the intestate. In such a condition of the affairs of this estate, George B. Tucker, on April 11th, in the present year, filed his bill of complaint against his brother, James A. Tucker, and his two sisters, Nancy Oxner and Mary Jeter, with their husbands, Emanuel Oxner and Thomas C. Jeter. This bill prays that the lands of which his deceased mother died seized shall be partitioned; that Thomas C. Jeter and wife shall account for their administration of the personal estate, and that the residue of the said estate, after the payment of debts, which shall be found upon such accounting, shall be distributed; and that the administrators shall be restrained from further prosecuting their action at law against him for the recovery of the balance which is due on his note, and he be permitted to settle the same in the general distribution of the estate. To this bill the defendants, James A. Tucker and Emanuel Oxner and wife, have filed a joint demurrer, and have assigned for cause of their demurrer, that in joining this matter with the prayer for an account of the administration, that the bill is multifarious. The other defendants, Thomas C. Jeter and his wife, have also filed a demurrer to so much of said bill as seeks a partition of the real estate, and have likewise assigned for cause of their demurrer, that in joining this matter with the prayer for an account of the administration and a distribution of the surplus of the personal estate, the bill is multifarious. All the defendants, except James A. Tucker, have also answered to the several parts of the bill. The demurrers of Jeter and wife and Oxner and wife, have been waived by their respective answers, each of which covers the whole case made by the bill and all the matters embraced in the several parts, and for this reason, if there were none other, would be overruled. But the demurrer of James A. Tucker, for the same cause, would still remain, and the objection of multifariousness must, therefore, be considered and disposed of. Lord Cottenham, in delivering his judgment in Campbell *v.* McKay, remarked: "To lay down any rule applicable universally, or to say what constitutes multifarious-

intestate, upon the bond of the said Addison R. Phillips, as administrator of the estate of the said John M. Allen, deceased; and a third being against the defendant, James C. F. Sims, for the purpose of trying the titles to the lot of land described in the complaint.

His Honor, the Circuit judge, overruled the first demurrer and sustained the second, "for the reason that it appears to the court that the cause of action embraced in the complaint against the defendant, James C. F. Sims, is improperly joined with other causes of action therein set forth."

Plaintiff appealed.

ness, as an abstract proposition, is, upon the authorities, utterly impossible; the cases upon the subject are extremely various, and the court, in deciding them, seems to have considered what was convenient in particular circumstances rather than to have attempted to lay down an absolute rule." Lord Redesdale describes it as "demanding several matters of different natures, of several defendants in same bill." The definition furnished by Mr. Story, is "the improperly joining in one bill of several matters properly distinct and unconnected, against one defendant, or the demand of several matters of a distinct and independent nature, against several defendants in the same bill." In another passage of his work he is more satisfactory. "Frequently," he says, "the objection raised to a bill, though termed multifariousness, is, in fact, properly speaking, a misjoinder of causes of writ, that is to say, the claims asserted in the bill are of so different a character that the court will not permit them to be litigated in one record. It may be that the plaintiffs and defendants are parties to the whole transactions which form the subject of the suit but, nevertheless, these transactions may be so dissimilar that the court will' not allow them to be joined together, but will require distinct records. But what is more familiarly understood by multifariousness, as applied to a bill, is where a party is brought as a defendant, upon a record, with a large portion of which, and of the case made by which he has no connection whatever." Without, however, attempting to define multifariousness in exact terms, an undertaking, declared by such high authority, utterly impossible of accomplishment, it may be safely affirmed that the present bill is not liable to this objection. Which one of the matters, in respect of which relief is here sought, is so distinct from and independent of all the others, that it ought not to be joined with them in one suit? What inconvenience can result from litigating in one record all the matters contained in this bill? The object of the whole suit is single—the settlement and distribution of the estate of the intestate, Fanny Tucker. It is true this estate consists, in part, of realty, and partition of this is asked; in other part of personalty, and it is asked that the surplus of this share be ascertained and distributed. It is true also that the personalty is in the hands of administrators, who are, in respect thereof, charged with the payment of the intestate's debts, and the bill prays that in order to ascertain

X

*Messrs. Baxter & Seibles,* for appellant.

*Messrs. Melton & Clark,* contra.

March 25th, 1880.   The opinion of the court was delivered by WILLARD, C. J.   This is a judgment creditor's bill against the administrator *de bonis non* of the assets of the intestate debtor, seeking satisfaction of the judgment out of the intestate estate.   The only question made by the appeal is one of alleged multifariousness in the complaint.   The complaint makes J. C. F. Sims,

what is the surplus liable to distribution, these administrators shall account for their administration. It is further true that the assets in the hands of the administrators consist, in part, of the note of the plaintiff, George B. Tucker, which they are suing to judgment at law, and he asks that as he is entitled to one-fourth of the whole estate, he may not be subjected to the expense of a suit at law to be compelled to pay money which is presently to be returned to him. But all these matters are parts of one whole, and the relief sought in respect of them severally, all conduces to the one end—of a settlement and distribution of the estate. What distinction is there between realty and personalty, so wide and deep that, although constituting parts of the same estate, the partition of each must be sought in a separate suit? They are both assets for the payment of debts, and are both distributable in the same shares among the same persons. Shall there be distinct bills required for the distribution of choses in possession, as for example negro slaves, and choses in action? Such things have been done. Of all the matters embraced in this bill, which one is it in which all the parties are not interested, and, if any, which of the parties is it who is not interested in that particular matter? The real estate? They are all equally interested in that. The personal estate? Each one is entitled to an equal share. The accounting asked from the administrators? These are equally liable to account to all. All are equally concerned in ascertaining the full surplus liable to distribution. Will it be tolerated that the distributees of an intestate shall maintain, as such, each his separate suit against the administrator for as many successive repetitions of the same accounting? On the contrary, and because this will not be allowed, one distributee may not now maintain his suit for such account without joining all the others. And as to the injunction prayed, that is a relief incidental merely to the general object of the bill, the settlement of the estate. It touches the recovery and application of the assets, and concerns all the parties. But it is not necessary in order to avoid the objection of multifariousness, that all these defendants should be interested in every matter embraced in the bill. There must be a thread of connection among the matters themselves. Some of the defendants must be interested in the whole, but others may be necessary parties, although their interest touches the subject of the suit only at particular points.

So far is a bill which, like this, seeks to have the whole estate of an intestate

an entire stranger to the estate, as must be assumed, a party, and demands relief against him. The facts alleged as connecting Sims with the case are that he is in possession of a parcel of land alleged to have belonged to the intestate at his decease, claiming title thereto. Plaintiff alleges further that at the decease of the intestate debtor the land in question was bound by his judgment. The statement of the complaint tendering an issue to Sims is as follows: " That the plaintiff is informed and believes that one James C. F. Sims claims to be the owner *in fee* of the tract of land herein described, but the plaintiff denies the validity of the said title, if any he have, and alleges that the same is illegal and void."

The code (Section 167, Sub-division 5,) allows a demurrer on the ground " that several causes of action have been improperly united." From the nature of this provision it is evident that any defendant may take the objection. If two independent causes of action, incapable of being united for the purposes of prosecution, are set forth in a complaint, all the defendants concerned are interested in having them separately considered, for the objection rests on the general ground that complete justice cannot be done where matters, foreign to each other, are considered together. This principle applies as directly to one party as to the other.

The objection of multifariousness in the present case comes from the defendants, who are proper parties to the creditor's bill, and not for Sims, who, as is alleged, was improperly joined with the others. The objection of a misjoinder of causes of action or multifariousness is general, going to the whole frame of the complaint, for the reasons already stated, and may be taken by any defendant; hence that question is open in the present case.

brought into one settlement, from being justly liable to the objection of multifariousness, that, upon consideration of fairness, convenience and completeness of justice, it greatly commends itself in this respect to the favor of the court. The contrary practice of splitting up the settlement of an estate into two or more suits, whether in the same or different courts, so that it is difficult, if not impossible, in any one to survey the whole field occupied by the interests of the parties, and their mutual equities, the full adjustment of which ought to enter into the settlement, is one " more honored in the breach than in the observance." The demurrers are overruled, and it is adjudged that the plaintiff is entitled to have the partition, account and distribution prayed for.

The question thus arises whether there has been a misjoinder of independent causes of action. The code (§ 190,) distributes the various causes of action into seven classes, allowing independent causes of action between the same parties, appertaining to any single class named, to be united together in one action, but does not permit a cause of action of one of this class to be united with one of another class in the same action, although the parties are the same in each.

The present complaint, considered as a creditor's bill, must belong either to the first or second class, which was described as consisting of cases arising out of: "1. The same transaction or transactions connected with the same subject of action. 2. Contract, express or implied;" while the cause of action against Sims, involving claim for the recovery of land, belongs to the fifth class.

The first part of class No. 1 embraces causes otherwise independent, but when arising between the same parties and out of a single transaction or course of dealing between such parties, it is conceivable that the same transaction between certain parties might give rise to several causes of action of a separate and distinct nature, such as a cause of action for the recovery of money on contract and one for the recovery of land or personal property or for damages to the person or to real or personal property, and also to causes of both legal and equitable cognizance. Independently of the connection established by Section 1, by means of the identity of the transaction out of which they arise, they would fall respectively under two or more of the seven different classes named, and could not be joined in one action, although between the same parties. The code connects them in class No. 1 for the purposes of prosecution when they have their origin in the same transaction.

The next case mentioned in class No. 1 is that of "transactions connected with the same subject of action." It must be remembered that this is not intended as the means of determining what matters, direct and collateral, may be brought together as parts of a single cause of action. The section of the code under examination uses the terms *causes of action* as including such as are recognized either at common law or in equity. It

leaves the question as to what matters may be brought within the compass of a single cause of action, whether of legal or equitable cognizance, to be determined by the antecedent rules of law and equity upon the subject. Its object is to declare what cases, which, prior to this code, had to be considered separately, and, by an independent form of procedure, can be grouped together in one action under the code. Viewed in this light, the language under immediate examination may be regarged as in substance declaring that when a certain right, or certain connected rights, between the same parties are brought into legal controversy, all transactions between the parties bearing on the state of these rights may be included within the scope of the action, although such transactions considered as independent transactions, would, in their nature, call for different forms of legal procedure for the purpose of investigation, according to the practice that prevailed prior to the adoption of the code.

It would follow, from the foregoing, that unless it can be made to appear that Sims was a proper party to the creditor's bill, as such, according to the rules of equity existing prior to the code, and so was fairly within the scope of that single cause of action, the demand against him would have to be regarded as a separate and independent cause of action, neither arising between the same parties, nor out of a single transaction, nor out of transactions affecting the same subject of action. This will readily be made apparent. The proper parties to an action against Sims to recover the land are the heirs or distributees of the intestate, in the absence of title made under him. The plaintiff not having made title under his judgment, has no claim to recover the land. The administrator, as such, does not appear to have any present demand upon the land, as it has not been made assets for distribution as will hereafter appear. There is, then, a complete failure of identity between the parties concerned in the respective causes of action. The claim against Sims has no relation to the transactions that are the proper subject of examination under the creditor's bill. So the causes of action do not concern the same subject of action. The subject of the creditor's bill is the right of the creditor to compel the

proper distribution of assets of the intestate estate, and for that purpose to compel the administrator and those connected with him in liability, to account, while the subject of the demand against Sims is the relative strength of the title by which the intestate and Sims respectively claimed the land in controversy. It is clear, then, that the code gives no means of connecting together the causes of action against the administrator and that against Sims, if they are to be regarded as independent causes of action.

It only remains to inquire whether the demand against Sims is a proper incident of the creditor's bill. If it is, then it is a part of a single cause of action in the sense in which the code refers to causes of action in the section under consideration.

It is true that when assets of an intestate may be traced into the hands of a stranger, coming to him through a *devastavit* committed by the administrator, by which such party is affected, he may be brought within the scope of the bill and decree, as was held in *Ragsdale.* v. *Holmes,* 1 *S. C.* 91, and reiterated in *Melton* v. *Withers,* 2 *S. C.* 561. But in the present case, the land of the intestate in the hands of Sims cannot be regarded as assets of the character for which the administrator is liable to account.

The lands of an intestate are not primarily assets for the purposes of administration, although made general assets for the payment of debts by the statute of 8 *Geo.* 2, *ch. VII.* The lands of a decedent may be sold, and the proceeds of the sale paid to the administrator for the purposes of administration. *Gen. Stat.* 458, § 10. When sold by the Probate judge he is required to take a special bond for their custody and application. As to such assets coming to the hands of the administrator, the language of the statute is: " And the administrator or executor receiving the same shall be chargeable therewith as with other assets which have come into their possession in the regular course of administration." *Gen Stat.* 458, § 10. While, then, the lands of the decedent are, strictly speaking, never assets in the hands of an administrator, and only become such in the hands of the executor, through special provisions in the will for that purpose, yet the proceeds of the sale of such real estate may

become assets in the hands of the administrator, and his accountability correspondingly extended.

No such assets are alleged to be in the hands or subject to the control of the administrator; in fact, no attempt to sell the lands in question appears to have been made. The whole subject is then foreign to the proper accountability of the administrator. It is not to be denied that it might become material to the present suit to seek a sale of the land in question, if it should appear that the present assets are insufficient for the payment of the debts of the estate; but such a proceeding would be incidental to the principle purpose of the complaint, and would not render it necessary that Sims should be made a party. It must be assumed that Sims claims to hold under title paramount to that asserted for the intestate; in that case it would be competent to sell the lands in Sims' possession, if necessary for the purposes of administration without making him a party, and leave the purchaser to contest the title of Sims in a proper action.

Neither the administrator nor the heirs of the intestate are seeking any remedy against the land in Sims' hands; the plaintiff alone is seeking to force them into such a controversy. One objection to allowing the plaintiff to insist that the controversy with Sims should be prosecuted at the expense of the estate and for his benefit is the fact, alleged in the complaint, that the plaintiff's judgment has a lien against the land in question as the estate of the judgment debtor. If so, the plaintiff has a direct remedy by enforcing his judgment against the land. There is, therefore, no necessity arising from the want of an adequate remedy at law that would justify the plaintiff in attempting to compel the administrator and heirs of the intestate to contest Sims' title at the expense of the estate, and for all that appears without a reasonable hope of success.

There is also another objection. Sims is not placed in the position of having assets of the intestate estate, through either a wrong of the administrator or of himself. He must be regarded as a *bona fide* holder of possession under claim of title, and can only be ousted by legal process. He is not in the least affected by the equities in the present case, and cannot be deprived of his

defence at law; nor can he waive it to the disadvantage of the other parties. Sims must, therefore, be regarded as a stranger to the present controversy, and the cause of action alleged against him as a distinct and independent cause of action, forming no part of the proper matters in controversy.

The order appealed from must be affirmed and the appeal dismissed.

McIVER and McGOWAN, A. J.'s, concurred.